# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) Criminal Action No. 04-00229-KD-N |
| | ) |
| OSCAR PEREZ LOPEZ, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This action is before the Court on Defendant Oscar Perez Lopez's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) (doc. 137), the United States' response and medical records (doc. 141, under seal), and Lopez's reply and medical records (doc. 143, 143-1, under seal).[1] Upon consideration, and for the reasons set forth herein, the Motion is DENIED.

I. Background

Lopez was indicted and charged with the offenses of conspiracy to possess with intent to distribute cocaine (Count One) and possession with intent to distribute cocaine (Count Two). The jury convicted Lopez on both counts. In May 2007, he was sentenced to 300 months as to Count One and 240 months as to Count Two, to serve concurrently. His sentence was reduced to

---

[1] The request for counsel embedded in the letter is DENIED. There is no constitutional or statutory right to counsel for "motions filed under § 3582; therefore, 'the decision to appoint an attorney is left to the discretion of the district court.'" United States v. Reese, No. 2:12-CR-87-WKW, 2020 WL 3621316, at *1 (M.D. Ala. July 2, 2020) (quoting United States v. Webb, 565 F.3d 789, 792 (11th Cir. 2009)) (addressing the right to counsel in the context of a § 3582(c)(2) motion). The Court finds that appointment of counsel is not necessary. Movant has shown the ability to effectively set forth the facts, claims and argument and otherwise prosecute this action. Additionally, the claims are not factually and legally complex or exceptional such that appointment of counsel would be warranted.

235 months pursuant to the 2014 Amendments to the United States Sentencing Guidelines regarding controlled substance quantities.

Lopez is now 52 years old. He is incarcerated at Correctional Institution Great Plains, a privately managed prison in Hinton, Oklahoma. He has served almost fourteen years of his sentence (doc. 143). His estimated release date is May 10, 2023.

II. Exhaustion

In relevant part, the compassionate release provision of 18 U.S.C. § 3582(c)(1), as amended by the First Step Act of 2018, provides that "the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment[.]" 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239.

The United States argues that Lopez's motion should be dismissed because Lopez failed to meet either of the procedural prerequisites for consideration of his motion (doc. 141, p. 20-23).[2] The United States argues that the procedural requirements are jurisdictional, and since neither were met, the Court lacks jurisdiction (Id., p. 24-25). Alternatively, the United States argues that the procedural requirements are mandatory claim-processing rules which the Court must enforce because the United States has properly raised the issue (Id., p. 24-29). The United States also argues that exhaustion cannot be excused because of the Covid 19 pandemic and that the procedural requirements cannot be waived or ignored as futile (Id.).

---

[2] The United States also argues that because Lopez's requests did not include the minimum information required by the Bureau of Prisons to consider a request for compassionate release, the 30-day period for consideration has not begun to run (doc. 141, p. 122).

In reply, Lopez states that he submitted requests to the Warden, and therefore, the Court may consider his motion for compassionate release (doc. 143). As with his motion, copies of decisions by various prison officials were attached (doc. 143-1).

Lopez's motion is dated May 6, 2020 (doc. 137, p. 1). Absent evidence to the contrary, the motion is deemed filed that day. Burke v. United States, 762 Fed. Appx. 808, 809–10 (11th Cir. 2019) ("Under the prison mailbox rule, an inmate's pro se § 2255 motion is deemed filed on the date it was delivered to prison authorities for mailing. Absent evidence to the contrary, we presume that a movant delivered his motion to prison authorities on the date he signed it. The government bears the burden of proving that the motion was delivered to prison authorities on a different date.") (citing Jeffries v. United States, 748 F.3d 1310, 1314 (11th Cir. 2014)).

Review of Lopez's documents shows that he made numerous requests for medical care in 2019 and 2020. However, the earliest request for compassionate release was signed March 18, 2020[3] when Lopez made an Inmate Request to Staff (doc. 143-1, p. 5-6). He did not mention the Covid 19 pandemic, but relied on his medical conditions, including diabetes and complications from two spinal injuries. He asserts that he is "terminally ill" and "continuously suffering from excruciating pain" in his "back, shoulders, arms and legs", is "unable to walk", and "completely dependent on a walker" (Id.). He also states that he is now in "need of care at a nursing home or assisted living facility, or any other suitable arrangement." (Id.). Lopez asks: "Could you please kindly file a motion for compassionate release on my behalf?" (Id., p. 6). He cites the First Step Act and 18 U.S.C. § 3582 and states "18 U.S.C. Section 3582 authorizes facility Warden to file such a motion." (Id.).

---

[3] Lopez completed a questionnaire wherein he was asked "Have you submitted a request for compassionate release to your warden?" Lopez answered "Yes" and gave the dates of March 18, 2020 and May 3, 2020 (doc. 143-1, p. 14). He appears to have used this same request again on May 3, 2020, striking thru March 18, 2020 (doc. 137, p. 14; doc. 143-1, p. 5-6).

The Court does not have information as to when the Warden received the March 18, 2020 request.  However, the Court finds the rationale of the prisoner mailbox rule applicable in this circumstance.  See United States v. Resnick, 451 F. Supp. 3rd 262 (S.D.N.Y. Apr. 2, 2020); United States v. Feucht, No. 11-CR-60025, 2020 WL 2781600, at *2–3 (S.D. Fla. May 28, 2020) (same).  Unless shown otherwise, an inmate's request for compassionate release should be deemed filed with the Warden on the day it is received by prison staff and inmates are presumed to have delivered the request to staff on the day it is signed.  United States v. Resnick, 451 F. Supp. at 269 ("The situation is analogous to the 'prisoner mailbox rule,' which provides that an inmate's papers are deemed filed the day that they are signed and given to prison officials for mailing.") (citing Houston v. Lack, 487 U.S. 266, 276, 282, 108 S. Ct. 2379 (1988)); United States v. Baker, No. CR 16-179, 2020 WL 4584195, at *3 (E.D. La. Aug. 10, 2020) ("Although the warden did not formally confirm receipt of his request until May 28, 2020, the Court finds that the operative date for calculating the 30-day lapse period under 18 U.S.C. § 3582(c)(1)(A) is April 20, 2020, the date that Baker submitted his request to prison officials.") (citing United States v. Feucht, 2020 WL 2781600, at *2 (S.D. Fla. May 28, 2020) and United States v. Resnick, 451 F. Supp. 3rd 262, 269 (S.D.N.Y. Apr. 2, 2020)).

Neither Lopez nor the United States provides information as to whether the Warden denied the request within the 30-day period following March 18, 2020.  On a form dated April 1, 2020, someone circled "ineligible" under the "First Step Act" as to Lopez (doc. 137, p. 4). But the form is not signed. There is no information as to who completed the form or whether it was completed in response to the March 18, 2020 request.

The Court finds that the request sent March 18, 2020 was sufficient to begin the 30-day period. Moreover, in this procedural posture,[4] the Court sees no reason to dismiss the motion without prejudice only to have Lopez re-file the motion. See United States v. Skaff, 2020 WL 3490074, at *1 (S.D.W. Va. June 25, 2020) ("Although Mr. Skaff petitioned the court on June 4, 2020, before 30 days had passed since the Warden's receipt, I find it would be a waste of judicial resources to have Mr. Skaff refile the motion now that 30 days have elapsed since the Warden's

---

[4] On April 7, 2020, Lopez made an Inmate Request for Informal Resolution wherein he asks for help to file a motion for compassionate release (doc. 137, p. 15, doc. 143-1, p. 7). As to compassionate release, on April 13, 2020, prison staff wrote

> "Furthermore, you request the facility prepare a compassionate release packet on your behalf. You were instructed by the case management coordinator (CMC) on April 7, 2020 to contact your assigned case manager and/or unit manager to start the process and provide all documentation required. You are responsible for initiating that process not unit staff.
>
> The Administrative Remedy Program is designed to resolve issues versus petitioning staff to begin a particular packet. A simple Inmate Request to Staff, i.e., cop out, can be sent to your respective unit team."

(Doc. 137, p. 16; doc. 143-1, p. 8). On April 13, 2020, Lopez made an Inmate Request to Staff wherein he asked a prison staff member to help him file a motion for compassionate release because of his medical conditions (doc. 137, p. 8). The request was denied on April 28, 2020. The Acting Facility Administrator, citing the Bureau of Prisons Program Statement 5050.50, wrote "At this time, you do not qualify for any of these extraordinary or compelling circumstances" (Id., p. 18). On April 22, 2020, Lopez made another Inmate Request to Staff pursuant to the Cares Act and for compassionate release alleging he met the criteria in U.S.S.G. § 1B1.13, cmt. n. 1. (doc. 137, n. 5). The staff member replied on April 29, 2020: "You have already received instruction on this." (doc. 137, p. 5). Which appears to be a reference to the April 28, 2020 denial. On April 28, 2020, Lopez made a Request for Administrative Remedy (doc. 137, p. 17; doc. 143-1, p. 9). Although the request appears directed at lack of treatment for his back injuries, it was considered as a request for compassionate release with an "issue date of 4/27/20" (Id.). On May 4, 2020, the Administrative Remedy Coordinator rejected the request as untimely as to the issues based on medical treatment and as to compassionate release "You must provide more specific information, e.g., case no., about your request/appeal so that it may be considered." (doc. 137, p. 19; doc. 143-1, p. 10). On May 3, 2020, Lopez re-submitted the Inmate Request to Staff dated March 18, 2020 (doc. 137, p. 14; doc. 143-1, p. 5-6) and on May 5, 2020, Lopez filed a Regional Administrative Remedy Appeal wherein he asks for help to file a motion for compassionate release (doc. 137, p. 20). Lopez did not provide the responses to the May requests.

5

receipt of the compassionate release request."); United States v. Blake, No. 15-CR-80018, 2020 WL 4677309, at *4 (S.D. Fla. Aug. 12, 2020) (same).

### III. Compassionate Release

Once a sentence is imposed, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194-95 (11th Cir. 2010); United States v. Shaw, 711 Fed. Appx. 552, 554-55 (11th Cir. 2017) (same). Specifically, the "court may not modify a term of imprisonment once it has been imposed except" as set out in 18 U.S.C. § 3582(c). See United States v. Pubien, 805 Fed. Appx. 727, 730, (11th Cir. Feb. 25, 2020) (quoting 18 U.S.C. § 3582(c)).

The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i) provides that the Court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)", if the Court finds that "extraordinary and compelling reasons warrant such a reduction" and the reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

"Extraordinary and compelling" reasons are not defined in the statute. Instead, Congress gave the Sentencing Commission the duty to promulgate general policy statements regarding sentence modifications pursuant to 18 U.S.C. § 3582(c)(1)(A) and stated that the Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Congress also stated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id.

Before the First Step Act, the Sentencing Commission promulgated the following Policy Statement, which set forth in relevant part, as follows:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A)[5] Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

The Commentary to the Policy Statement includes four examples of extraordinary and compelling reasons to consider a reduction of sentence under § 3582(c)(1)(A). As discussed herein, and as conceded by the United States, Lopez's proffered reasons fall under Application Note 1(A)(ii)(I).[6]

Application Note 1(A)(ii)(I) provides that a defendant's physical or medical condition may qualify if certain criteria are met. Specifically, if the defendant is -

---

[5] Subparagraph (1)(B) applies to prisoners who are 70 years or older and have served at least 30 years in prison. Since Lopez is 52 years old, this Policy Statement does not apply.

[6] Lopez alleges that he has a terminal illness. Specifically, diabetes and chronic disabling back pain, but his medical records do not indicate that his conditions meet the definition of terminal illness in Application Note 1(A)(i). Lopez does not allege that he is "suffering from a serious functional or cognitive impairment" or that he is "experiencing deteriorating physical or mental health because of the aging process[.]"; the criteria in Application Note 1(A)(ii)(II) & (III). Lopez does not argue that his family circumstances meet the criteria in Application Note 1(C), or that he meets the age requirement in Application Note 1(B) (at least 65 years old). U.S.S.G. § 1B1.13, cmt. n. 1(A)(i) & (ii)(II)(III), (B) & (C).

7

> (I) suffering from a serious physical or medical condition, . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I).

In that regard, Lopez states that he injured his spine in September 2017 when he fell from a top bunk and that he injured his spine again in February 2018 when he fell in a stairway (doc. 137, doc. 143-1. p. 5-6).  He states that at a spinal examination in August 2019, the physician pressed hard on each disk, and he has been in severe pain since the examination (doc. 137; doc. 143-1, p. 7).  He alleges that his spinal injury was improperly treated and as a result, he is in chronic pain in his back, arms and legs, and cannot walk without a walker.  The medical records show that a rolling walker with a seat and a back brace were issued to Lopez (doc. 137, p. 29-30).  His Medical Duty Status as of April 2020 shows that he must use a lower bunk, must be housed "in close unit" and cannot work – "no duty due to medical condition" (doc. 143-1, p. 25). The medical records show testing and treatment for his back injury including pain management medications, MRI's, and consultation with a neurologist (doc. 137, p. 9-12, p. 25-27; doc. 143-1, p. 1-4, p. 20-24, p. 29-31). The medical records also show that Lopez is a Type I diabetic, for which he is takes two types of insulin and metformin and that he is treated for high cholesterol, hypertension, glaucoma, anxiety, and depression (doc, 143-1, p. 20-22).

Lopez also argues that he is "very afraid" of contracting Covid-19 (doc. 137, doc. 143). He points out that Covid 19 is present at his facility. As of October 12, 2020, four inmates had tested positive at Correctional Institution Great Plains, a privately managed prison.  One-hundred and twenty-one inmates had recovered from the virus and one inmate had died. https://www.bop.gov/coronavirus/ (last visited October 12, 2020).

8

The United States does not concede that Covid 19, standing alone, is an extraordinary or compelling reason "other than" reasons identified in the Policy Statement, or that Covid 19 in combination with Lopez's diagnosed medical conditions including back pain constitute extraordinary or compelling reasons for compassionate release (doc. 141, p. 30-32). See U.S.S.G. §1B1.13 cmt. n. (1)(D) (providing that the courts may consider "Other Reasons – As determined by the Director of the Bureau of Prisons, [if] there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." However, the United States concedes that Lopez qualifies for consideration for compassionate release because his medical records show that his Body Mass Index (BMI) is 33.1 (doc. 141, p. 29-30; doc. 137, p. 9). The United States points out that the Centers for Disease Control and Prevention (CDC)[7] has found that individuals with a BMI greater than 30 have an elevated risk of becoming seriously ill from Covid 19 (doc. 141, p. 29).

The United States also argues that even if Lopez meets his burden to show an extraordinary and compelling reason for a sentence reduction, the sentencing factors in 18 U.S.C. §3553(a) weigh against compassionate release. Specifically, Lopez's criminal history and characteristics primarily his lack of credibility, prior conviction for marijuana, and two prior convictions for illegal reentry; and the nature and circumstances of his offense including his supervisory role (doc. 141, p. 32-39). The United States points out that Lopez's sentence has already been reduced from 300 months to 235 months, and that this sentence remains fair and appropriate to address his conduct and criminal history.

---

[7] *Centers for Disease Control, Groups At Higher Risk for Severe Illness,* available at
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html

However, the Court may grant a reduction of sentence for early release only "after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)." 18 U.S.C. § 3582(c)(1)(A). The Court has considered Lopez's information regarding the programs he has taken (doc. 137, p. 22-24).  However, Congress has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

The Court has also considered the "nature and circumstances" of Lopez's offenses and finds that this factor does not weigh in favor of a sentence reduced to time served. 18 U.S.C. § 3553(a)(1).  Lopez was a leader or organizer in a drug-trafficking conspiracy that brought a substantial amount of cocaine into the United States.  Also, Lopez's "history and characteristics" do not weigh in favor of a sentence reduced to time served. Id.  In 1996, Lopez was convicted for trafficking marijuana and deported to Mexico. He was sentenced to ten years in custody, suspended to serve ten years on probation.  He illegally reentered the United States and in 2002, was arrested and sentenced to twelve months and one day for unlawful reentry

Despite his prior marijuana trafficking conviction and conviction for illegal reentry, Lopez engaged in the instant cocaine trafficking offense. In this circumstance, early release would not meet the need for the sentence imposed to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense", or to adequately deter criminal conduct and "protect the public from further crimes of the Defendant. 18 U.S.C. § 3553(a)(1) and (a)(2)(A), (B), & (C).  Accordingly, Lopez's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) is DENIED.

IV.  CARES Act

Previously, the Bureau of Prisons had authority to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."  18

U.S.C. § 3624(c)(2) (as amended by the First Step Act of 2018, Pub. L. 115-391, Title I, § 102(b)(1), Title VI, § 602, 132 Stat. 5210, 5233, 5238) (effective Dec. 21, 2018).  Additionally, the statute required that the Bureau of Prisons "to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." Id.

Under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516,, effective March 27, 2020, the BOP Director is permitted to lengthen the maximum amount of time a prisoner may be placed in home confinement, in certain circumstances and during a specified period of time after the declaration of national emergency due to Covid 19, if the Attorney General found that emergency conditions would materially affect the functioning of the BOP.  CARES Act, Pub. L. 116-136, § 12003(b)(2).[8]  On April 3, 2020, Attorney General William Barr made this finding and gave the Director authority to exercise this discretion. The Director was directed to "immediately review all inmates who have COVID-19 risk factors, as established by the CDC, starting with the inmates incarcerated at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated facilities where you determine that COVID-19 is materially affecting operations." *Memorandum from Attorney General William Barr to Director of Bureau of Prisons, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (April 3, 2020), https://www.justice.gov/file/1266661/download

---

[8] "Home Confinement Authority.  During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." CARES Act, P.L. 116-136, § 12003(b)(2) (2020).

However, the CARES Act did not give the Court authority to direct the BOP to consider an inmate for home confinement or direct the BOP to place an inmate in home confinement. Under 18 U.S.C. § 3621(b), the BOP "shall designate the place of the prisoner's confinement". Therefore, to the extent that Lopez's motion could be construed[9] as motion pursuant to the CARES Act, the motion is DENIED. See United States v. Allen, 2020 WL 2199626, at *1 (S.D. Ga. May 6, 2020) (finding that a "request for home confinement under the CARES Act is different from a reduction-in-sentence (RIS) request based upon compassionate release" and that the statutes which implement the CARES Act, 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541, "do not authorize a federal court to order the BOP to release a prisoner.").

**DONE** and **ORDERED** this 14th day of October 2020.

> **s / Kristi K. DuBose**
> **KRISTI K. DuBOSE**
> **CHIEF UNITED STATES DISTRICT JUDGE**

---

[9] Daniele v. United States, 740 Fed. Appx. 973, 977 (11th Cir. 2018) ("… we have held that pro se 'pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'") (quoting Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998)).